UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK        FOR ONLINE PUBLICATION ONLY

------------------------------------------------------------- X
KAMELA PAYNE,                                                :
                                                             :
                              Plaintiff,                     :    MEMORANDUM
                                                             :    AND ORDER
        - against -                                          :
                                                             :    04 CV 2897 (JG)
THE MOUNT HOPE HOUSING                                       :
COMPANY, INC. and SHAUN M. BELLE,                            :
                                                             :
                              Defendants.                    :
------------------------------------------------------------- X

A P P E A R A N C E S :

    LAW OFFICES OF ALBERT RIZZO
        60 East 42nd Street
        New York, NY 10165
    By:    Albert Rizzo
        Attorneys for Plaintiff

    LAW OFFICE OF KOURAKOS & KOURAKOS
        271 Main Street
        Eastchester, NY 10709
    By:    John G. Kourakos
        Attorneys for Defendants

JOHN GLEESON, United States District Judge:

        Kamela Payne brings this action against her former employer pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York common law. Payne's amended complaint alleges five causes of action: (1) wrongful termination, in retaliation for Payne's complaints about sexual harassment by her immediate supervisor, Michael Hendrickson,[1] in violation of Title VII; (2) retaliatory termination, in violation of the

---

[1] Hendrickson is not a party to this action.

NYSHRL; (3) as against defendant Shaun Belle, aiding and abetting her retaliatory termination, in violation of the NYSHRL, specifically N.Y. Exec. Law § 296(6); (4) punitive damages; and (5) intentional infliction of emotional distress. Defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss causes of action (3) through (5) for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion is granted in part and denied in part.

BACKGROUND

Payne's amended complaint alleges that she worked at The Mount Hope Housing Company, Inc. as a property manager from December 14, 1998 to her termination on April 13, 2000. *See* Amended Complaint ("Compl.") ¶¶ 14, 40. Until December 1999, she "dutifully performed all of the responsibilities of her job" and received only positive evaluations. *Id.* ¶¶ 15-16.

In October 1999, Michael Hendrickson became Payne's immediate supervisor, and, beginning October 25, 1999, made comments to Payne on "numerous occasions" that were sexual in nature and indicated to Payne Hendrickson's sexual interest in her. *Id.* ¶¶ 18-19. On December 9, 1999, "Hendrickson put his hand on [Payne]'s waist in a sexually suggestive manner" and "was rebuffed" because Payne did not welcome the touching. *Id.* ¶¶ 20-21.

The first negative remarks about Payne's performance came four days after the December 9 incident -- Hendrickson told Payne he was going to write her up for being late, not having her inspection reports prepared on time, and not submitting all her outstanding reports. *See id.* ¶¶ 22-24. Payne claims the threats had no basis because she "had legitimate reasons" for not filing her reports on time and was not, in fact, late to work. *See id.* ¶ 25.

Payne wrote a letter to defendant Belle on December 15, 1999, telling him of Hendrickson's behavior and requesting an investigation of her claims of sexual harassment. *Id.* ¶ 26. The same day and going forward, Payne received from both Hendrickson and Belle "a number of written memoranda" that criticized her job performance. *Id.* ¶ 27. Payne claims the allegations "were false and were intended to establish a record of bad performance" to set the stage for later retaliatory measures. *Id.* ¶ 28.

Payne was out of work between December 28, 1999 and March 27, 2000, on disability leave for an injury she suffered while working. *See id.* ¶¶ 29-31. During that period, on March 8, 2000, Payne filed a sexual harassment and retaliation complaint against Hendrickson and the named defendants with the Equal Employment Opportunity Commission and the New York State Division of Human Rights. *Id.* ¶ 32. When Payne returned to work, Hendrickson began to withhold important information from Payne about the properties she managed: information about City housing violations and purchase orders. *Id.* ¶ 33. On March 31, 2000, Payne complained to Hendrickson in writing that she required the purchase orders and other relevant information, to no avail. *Id.* ¶¶ 34-35.

On April 11, 2000, Payne received a memorandum from Hendrickson criticizing her for not being at her scheduled location. *Id.* ¶ 36. Payne claims this memorandum, too, was false. *Id.* ¶ 37. The next day, after Hendrickson asked Payne to leave her work station and wait in the kitchen while he searched her work area, Belle entered the kitchen and told Payne, "[Y]ou have two choices, you can either resign or you can be terminated." *Id.* ¶¶ 38-39. Payne was terminated on April 13, 2000. *Id.* ¶ 40.

On April 22, 2000, Belle filed a defamation action against Payne, which Payne

3

asserts was calculated "to further intimidate Plaintiff into discontinuing her discrimination Charge." *Id.* ¶ 41.

DISCUSSION

A.   *Standard of Review on a Motion To Dismiss*

A motion to dismiss tests the legal, not the factual, sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)) (prior citations omitted)). For the purposes of the motion, I accept the factual allegations in Payne's complaint as true, and draw all inferences in her favor. *See Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005), *cert. granted*, 126 S. Ct. 2965 (2006). I may not grant the motion unless it appears beyond doubt that Payne can prove no set of facts that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).

B.   *The NYSHRL Aiding and Abetting Claim*

The NYSHRL provides that it is "an unlawful discriminatory practice . . . [f]or an employer . . . because of the . . . sex . . . of any individual . . . to discriminate against such individual . . . in terms, conditions, or privileges of employment." N.Y. Exec. Law. § 296(1)(a).

4

The same article of the NYSHRL makes it "an unlawful discriminatory practice . . . [f]or any employer . . . to discharge, expel or otherwise discriminate against any person because he or she opposed any practices forbidden under this article or because he or she filed a complaint, testified or assisted in any proceeding under this article." *Id.* § 296(1)(e).

Payne alleges a cause of action against Belle pursuant to the NYSHRL provision that makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." *Id.* § 296(6). The Second Circuit has explained that "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable" under § 296(6). *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Defendants argue that Payne's aiding and abetting cause of action fails to state a claim, because Payne has not sufficiently alleged Belle's actual participation in the alleged retaliatory activity.[2]

I disagree. Payne has alleged that "[b]eginning on and after" the date she wrote a letter to Belle describing her supervisor's sexually harassing behavior and requesting an investigation, Belle and Hendrickson sent her critical but false memoranda about her job performance. Compl. ¶¶ 26-28. That Payne began to receive the memoranda only (and immediately) after she complained of sexual harassment supports the inference that Belle and Hendrickson intended to lay a pretextual foundation for Payne's retaliatory discharge. In addition, Payne has alleged that Belle filed a defamation action against Payne nine days after he

---

[2] Defendants reserve their argument that "there is no cause of action for any discrimination or sexual harassment" under the NYSHRL, Defendants' Memorandum of Law in Support of the Motion To Dismiss Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(6) at 3, stating that Payne's causes of action "for wrongful termination under Federal and State law . . . are not the subject of this motion," *id.* at 2.

5

terminated her. *See* Compl. ¶¶ 40-41. I agree with Payne that the timing of this action supports the inference that it was levied to pressure Payne to drop her discrimination charges.

Defendants argue that "an individual cannot be held liable simply for the act of terminating an employee." Defendants' Memorandum of Law in Support of the Motion To Dismiss Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(6) ("Defs.' Br.") at 3. A holding to the contrary, they argue, would be "untenable, illogical, and . . . clearly not the intent of the statute." *Id.* But Payne's complaint alleges more than a lone act of termination, and her allegations, if proved, could establish liability under § 296(6).

*Leykis v. NYP Holdings, Inc.*, 899 F. Supp. 986 (E.D.N.Y. 1995), does not support defendants. *Leykis* dismissed a discriminatory discharge complaint for failure to state a claim under N.Y. Exec. Law § 296(1), the direct liability provision of the NYSHRL. The case is not analogous because § 296(1) plaintiffs must show a different sort of actual participation on the part of the defendant -- they must allege that the defendant had "decisionmaking power." *McNulty v. New York City Dep't of Fin.*, 941 F. Supp. 452, 460 (S.D.N.Y. 1996). *Compare Dunson v. Tri-Maint. & Contractors, Inc.*, 171 F. Supp. 2d 103, 114-15 (E.D.N.Y. 2001) ("Defendants rely on *McNulty*[, *supra*,] for the proposition that in a termination case a showing of 'actual participation' for aiding and abetting also requires a showing of some decision making power. Defendants' reliance on *McNulty* is misplaced [because] *McNulty* was addressing a claim of direct liability . . . , not a claim of aiding and abetting under § 296(6)."). Moreover, even if the *Leykis* standard applied to the claim at issue, plaintiff would meet the test, as (1)

defendants concede that Belle was the person who terminated Payne, *see* Defs.' Br. 3,[3] and (2), as discussed above, Payne's allegations about Belle's participation do more than "merely nam[e] [him] as a defendant" and "identif[y] him in the Complaint." *Leykis*, 899 F. Supp. at 993.

C.   *The Punitive Damages Claim*

Defendants argue that Payne's claim for punitive damages is insufficiently pleaded. I disagree. A plaintiff may recover punitive damages in certain cases under Title VII upon demonstrating that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). To prevail on the claim, Payne "need not show that the defendant committed egregious or outrageous acts. Rather, [she] need only demonstrate that the defendant had the 'requisite state of mind' of malice or reckless indifference." *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 356 (2d Cir. 2001) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999)).

Taking Payne's allegations to be true, they meet this test. The complaint alleges that defendants' establishment of a pretextual record falsely justifying her retaliatory discrimination, in addition to Belle's filing of a defamation lawsuit to intimidate her out of engaging in protected activity, was "deliberate, callous, malicious and oppressive, and in disregard of the Plaintiff's rights." Compl. ¶ 58. The complaint thus suffices to allege a malicious state of mind, *i.e.*, discriminatory actions taken despite the "perceived risk that [the] actions [would] violate federal law." *Kolstad*, 527 U.S. at 536.

---

[3]   "Without participating in the underlying discrimination or sexual harassment, an individual cannot be held liable simply for the act of terminating an employee. To allow such a claim against a chief operating officer such as Belle in the instant case would have the effect of declaring that any individual who fired an aggrieved party would be personally liable for that firing . . . ."

7

Defendants argue that Payne's "general assertion" of the requisite state of mind "does not suffice," Defs.' Br. 4, but they are wrong. The federal rules do not require Payne to plead defendants' state of mind with specificity. All that is required is "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 474. Payne's allegations of a "deliberate" and "malicious" state of mind provide defendants with all the notice that is required.

D.  *The Claim of Intentional Infliction of Emotional Distress*

Under New York law, a claim of intentional infliction of emotional distress ("IIED") requires allegations of "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *see also Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (quoting Restatement (Second) of Torts § 45 cmt. d (1965))). Defendants challenge that Payne's allegations cannot support the first element of the claim. I agree.

To support her claim of "extreme and outrageous conduct," Payne points to "[d]efendants' wrongful conduct in threatening to terminate Plaintiff's employment publicly, in her office, and in front of her colleagues." Compl. ¶ 61. But courts applying New York law do not find an employer's infliction of a humiliating discriminatory termination, without more, to rise to the level of extreme and outrageous conduct. *See, e.g.*, *Murphy*, 58 N.Y.2d at 303

8

(holding that employee forcibly evicted from company for engaging in protected activity and because of age discrimination failed to state a claim of IIED); *see also Russo-Lubrano v. Brooklyn Fed. Sav. Bank*, No. CV-06-0672 (CPS), 2007 WL 121431, at *7 (E.D.N.Y. Jan. 12, 2007) (collecting cases). The courts have set a high bar for "extreme and outrageous conduct" in the wrongful discharge context not because they are callous, but because they "are wary of allowing plaintiffs to recharacterize their claims for wrongful or abusive discharge, both of which are not recognized in New York, as claims for intentional infliction of emotional distress." *Gerzog v. London Fog Corp.*, 907 F. Supp. 590, 604 (E.D.N.Y. 1995); *see also Murphy*, 58 N.Y.2d at 303 (same).

Payne asks that I grant her leave to replead her IIED claim. Defendants assert that such relief would be futile "since the facts do not support any viable cause of the action." Defendants' Reply to Plaintiff's Memorandum of Law ¶ 3. But I cannot say at this stage, in light of plaintiff's allegations regarding sexual harassment, that defendants are necessarily correct. Claims of IIED relating to sexual discrimination and battery have survived motions to dismiss in New York. *See, e.g.*, *O'Reilly v. Executone of Albany, Inc.*, 503 N.Y.S.2d 185, 186 (3d Dep't 1986); *Collins v. Willcox, Inc.*, 600 N.Y.S.2d 884, 885-86 (Sup. Ct. 1992); *see also Koster v. Chase Manhattan Bank, N.A.*, 609 F. Supp. 1191 (S.D.N.Y. 1985). Accordingly, the application to replead is granted.

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss claims (3) and (4) is denied. The motion to dismiss claim (5) is granted. Payne is granted leave to replead that claim on or by April 9, 2007.

So ordered.


John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
 March 25, 2007